1   DENNIS P. RIORDAN, Esq., SBN 69320
    dennis@riordan-horgan.com
2   DONALD M. HORGAN, Esq., SBN 121547
    don@riordan-horgan.com
3   RIORDAN & HORGAN
    523 Octavia Street
4   San Francisco, CA 94102
    Telephone: (415) 431-3472
5   Facsimile: (415) 552-2703

6   Attorneys for Defendant-Appellant
    CHANDRAKANT SHAH
7

8                   IN THE UNITED STATES DISTRICT COURT

9               FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  In re                                )   No. CV 13-04634 EJD
                                         )
12  SAN JOSE AIRPORT HOTEL, LLC, dba     )
    HOLIDAY INN SAN JOSE;                )   (A.P. No. 11-05236)
13  MOBEDSHAHI HOTEL GROUP,              )
                                         )
14              Debtors.                 )
                                         )
15  _____     )
                                         )
16  MOHAMED POONJA, Chapter 7 Trustee    )
    for SAN JOSE AIRPORT HOTEL, LLC,     )
17  dba HOLIDAY INN SAN JOSE, Debtor,    )
                                         )
18              Plaintiff-Appellee.      )
                                         )
19       vs.                             )
                                         )
20  CHANDRAKANT SHAH,                    )
                                         )
21              Defendant-Appellant.     )
                                         )
22  _____     )

23

24

25                     **APPELLANT'S REPLY BRIEF**

26

27

28

**TABLE OF CONTENTS**

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    THE TRUSTEE RELIES UPON THE WRONG STANDARD
      OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   THE PSA WAS NO LONGER OPERATIVE AT THE TIME OF
      THE ALLEGED BREACH . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.  THE TRUSTEE FAILED TO ESTABLISH THAT THE PSA'S
      RISK-OF-LOSS PROVISION APPLIED ONLY TO "PHYSICAL"
      DAMAGE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.   THE TRUSTEE FAILED TO DEMONSTRATE THAT THE PSA
      OBLIGATED SHAH TO OBTAIN NEW APPRAISALS. . . . . . . . . . . . . . . . . . . . . . . 6

V.    NOTHING IN THE RECORD SUPPORTS THE TRUSTEE'S CLAIM
      THAT THE  BANKRUPTCY COURT WOULD HAVE APPROVED
      THE SALE IF SHAH HAD DEMONSTRATED A NET WORTH OF
      $11 MILLION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

VI.   COMPLIANCE WITH SELLER'S DEMANDS WOULD HAVE
      REQUIRED FALSE APPRAISALS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

VII.  THE TRUSTEE FAILED TO PROVE THAT THE BANKRUPTCY
      COURT WOULD HAVE APPROVED THE SALE, EVEN HAD SHAH
      TENDERED TWENTY MILLION DOLLARS IN EQUITY. . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

1

## TABLE OF AUTHORITIES

2

### CASES

3
*Bright v. Bechtel Petroleum, Incorporated.,*
780 F.2d 766 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

4
*Feder v. Lazar (In re Lazar),*
83 F.3d 306 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5

*Harris v. Gulf Insurance Company.,*
6
297 F.Supp. 2d 1220 (N.D. Cal. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7
*In re Coates,*
180 B.R. 110 (Bankr. D.S.C. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

8
*In re Deep River Warehouse, Incorporated.,*
9
No. 04-52749, 2005 WL 1287987. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

10
*In re Geijsel,*
480 B.R. 238 (Bankr.D.S.C.1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

11

*In re Nauman,*
12
No. 10-00414, 2011 WL 240804. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

13
*In re Quality Stores, Incorporated.,*
272 B.R. 643 (Bankr. W.D. Mich. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

14

*In re Western Warren Street Associate.,*
15
151 B.R. 307 (Bankr. N.D.N.Y. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

16
*Internet Brands v. Ultimate Coupons.com, LLC,*
CV 11-5358-CAS, 2013 U.S. District LEXIS 110734. . . . . . . . . . . . . . . . . . . . . . . . . . . 13

17
*Iris Biotechnologies, Incorporated v. Heller Ehrman LLP,*
18
No. C 12-06232, 2013 WL 4456063. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

19
*L.K. Comstock and Company., Incorporated v. U. Eng'rs and Constructors Incorporated.,*
880 F.2d 219 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

20
*McKnight v. Torres,*
21
563 F.3d 890 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7

22
*Ratanasen v. State of Cal., Dept. of Health Service.,*
11 F.3d 1467 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

23

*Rissetto v. Plumbers and Steamfitters Local 343,*
24
94 F.3d 597 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

25
*UIP Limited., LLC v. Lincoln Nat. Life Insurance Company.,*
09-0006, 2009 WL 4497233. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

26

*United States v. Elias,*
27
921 F.2d 870 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28

**Table of Authorities continued**

*Walthall v. United States,*
131 F.3d 1289 (9th Cir.1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Whaley v. Belleque,*
520 F.3d 997 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## STATUTES

11 U.S.C. §363(p)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

11 U.S.C. § 506.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

11 U.S.C. §1129(a)(11). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Cal. Civ. Code § 3301.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**INTRODUCTION**

In his Opening Brief, Shah established that the judgment against him issued by Bankruptcy Judge Johnson for more than eleven million dollars lacked a basis in both fact and law. Shah demonstrated that Appellee Mohamed Poonja (hereafter "the Trustee") failed to carry his burden of proving that Shah had breached any obligation set forth in the Purchase and Sale Agreement ("PSA") of the San Jose Airport Hotel (the "Hotel"), or that Shah proximately caused any monetary loss whatsoever to the Hotel's estate. Before the alleged breach occurred, the PSA was voided both by the refusal of Bankruptcy Judge Efremsky to approve the sale on the contractual terms of PSA, and by the Hotel's dramatic drop in value. Separately, the terms of the PSA did not require Shah to commission costly new appraisals of his property.

Furthermore, any failure on Shah's part to provide information or documentation to the Hotel did not cause any financial loss because, under the Trustee's own reading of the Bankruptcy Court's requirements for approval, the Court would never have approved the sale of the Hotel to Shah in light of the devaluation of Shah's assets. In addition, conscious of its statutory obligation to protect the interests of the Hotel's secured creditor, Judge Efremsky properly exercised his broad discretion to set other conditions for approval of the sale that the Hotel could not and did not meet. For each of those reasons, the judgment against Shah should be reversed.

Nothing in the Trustee's response compels a different result. Rather, the response urges the Court to adopt the wrong standard of review, attempts to manufacture factual disputes where none exist, and fails to respond to several key issues raised in Shah's Opening Brief. The undisputed record establishes that the Trustee failed to carry his burden at trial to prove that Shah breached the PSA, or that any breach in turn caused an economic loss to the Hotel. The judgment of the Bankruptcy Court must be overturned.

**DISCUSSION**

**I.    THE TRUSTEE RELIES UPON THE WRONG STANDARD OF REVIEW**

In an attempt to insulate the eleven million dollar judgment from judicial review, the Trustee urges the Court to adopt the deferential "clearly erroneous" standard in reviewing the

1   Bankruptcy Court's judgment.  Although the Trustee concedes, in a footnote, that the Bankruptcy

2   Court's conclusions of law must be reviewed *de novo*, he nonetheless claims that "Shah's

3   contentions on appeal amount mainly to disagreements with Judge Johnson's resolution of

4   conflicting factual evidence." (Appellee's Br. at 7 n.4, 7-8.)  Nothing could be further from the

5   truth.  As expressly set forth in Shah's Opening Brief, the factual basis for this appeal rests,

6   almost verbatim, on undisputed portions of the records of the hearings before Bankruptcy Judges

7   Efremsky and Johnson and from the relevant portions of the August 2, 2013 Order by Judge

8   Johnson.[1]   (See Appellant's Br. at 3.)

9        The threshold issue framed by Shah's appeal is whether, assuming the accuracy of the

10  facts relied upon by the Bankruptcy Court, Shah breached the PSA by failing to provide the new

11  appraisals that Merle Meyers, the Hotel's counsel, demanded.  The wording of the PSA is

12  indisputable: it states that Shah will purchase the Hotel upon "the terms set forth in this

13  Agreement" (Article 1); those terms could not be modified except by written agreement of the

14  parties (Article 9.7); and the PSA's integration clause declared unequivocally that: "the Parties

15  acknowledge and agree that there are no agreements or representations relating to the subject

16  matter of this Agreement, either written or oral, express or implied, that are not set forth in this

17  Agreement . . . ."  (Article 9.10, cited in Order at 7).  The Bankruptcy Court's determination that

18  Shah breached the PSA clearly involved no factual determinations, is entirely a conclusion of

19  law, and is therefore reviewed *de novo* by this Court. *McKnight v. Torres*, 563 F.3d 890, 892 (9th

20  Cir. 2009) (question of "whether the facts establish a violation of the contract is a question of

21  law"); *Feder v. Lazar* (*In re Lazar*), 83 F.3d 306, 309 (9th Cir. 1996).

22        The Trustee further claims that this Court should uphold the decision of the Bankruptcy

23  Court because the judgment reflects a "factual finding" resolving "conflicts in the evidence," and

24  therefore may not be reversed so long as it is supported by "substantial evidence."  (Appellee's

25  _____

26      [1]  If the Court were to determine that further development of the record is necessary to
    resolve a disputed factual issue, the matter should be remanded to the Bankruptcy Court for that
27  purpose. *Walthall v. United States*, 131 F.3d 1289, 1293 (9th Cir.1997) (recognizing power of
    district court reviewing decision of bankruptcy court to remand the matter to the bankruptcy
28  court for further factual development of the record).

Br. at 17-18.)  But a "conclusion of law cannot be turned into a finding of fact by simply labeling

it as such."  *Ratanasen v. State of Cal., Dept. of Health Serv.*, 11 F.3d 1467, 1469 (9th Cir. 1993).

And the so-called "conflicts in the evidence" identified by the Trustee concern hearing testimony

which Shah has neither cited or relied on in this appeal and which have no conceivable relevance

to the issues Shah has raised.[2]

On an issue of credibility that is crucially relevant to the appeal—Shah's claim that by

December 2009, his net worth had dropped to substantially less than $20 million—Judge

Johnson found Shah to be credible, ruling as follows:

> Shah was right to be concerned, based on the unprecedented plunge
> in property value, that his own assets might have diminished in
> value. Shah's contention that by December 2009, there was no
> point in giving Debtor further appraisals of his real properties
> because they would not appraise for the valuations he attributed to
> them earlier in 2009, is consistent with the dramatic decline in the
> Hotel's value at that same time.

(Order at 18-19.)  The Trustee cannot and does not challenge this factual finding.

Further, nothing in Judge Johnson's order suggests that the basis for his decision hinged

on the resolution of so-called "conflicts in the evidence."  Based on its reading of the PSA, the

lower court found Shah "breached the PSA by refusing" to provide new appraisals.  (Order at

15.)  The evidence was undisputed that Shah did not obtain new appraisals, and Shah did not and

does not claim otherwise.  The holding of a breach thus is purely a conclusion of law.

In addition, even if Judge Johnson's conclusion that Shah breached the PSA could be

characterized as a mixed finding of law and fact, it would still be reviewed *de novo.  Ratanasen,*

11 F.3d at 1469 (mixed findings of law and fact by bankruptcy court reviewed *de novo*); *In re*

*Allvest Corp.*, No. 3:06 - cv - 00044, 2006 WL 2220436, at *1 (July 31, 2006) (in an appeal from

bankruptcy court to the district court, the standard of review is *de novo* for "mixed questions of

---

[2] For example, the Trustee devotes substantial effort to attacking Shah's credibility at
trial.  (*See*, *e.g.*, Appellee's Br. at 8-10.)  But the issues of whether Shah did or did not realize
that the Hotel was in bankruptcy, or did or did not understand the meaning of "Bankruptcy Court
Approval," or did or did not believe that he was to accept ownership in the Hotel in "mint
condition," have no bearing on the questions raised on appeal by Shah. (*Id.* at 8.)

1  law and fact").

2      Finally, the Trustee claims that Judge Johnson "considered a plethora of extrinsic

3  evidence" in ruling that Shah breached the PSA. (Appellee's Br. at 17.) Given the PSA's

4  aforementioned integration clause in Article 9.10, such reliance, had it occurred, would itself

5  have constituted reversible error. But nothing in Judge Johnson's Order suggests that he relied on

6  extrinsic evidence in interpreting the PSA. Rather, the Order merely recites Shah's obligation

7  under the PSA to assist in obtaining approval for the sale. (Order at 15.) And even if Judge

8  Johnson did consider extrinsic evidence, the proper standard of review for the issue of whether

9  Shah breached the PSA would still be *de novo*. *See L.K. Comstock & Co., Inc. v. U. Eng'rs &*

10  *Constructors Inc.*, 880 F.2d 219, 221 (9th Cir. 1989) ("if the contract interpretation includes a

11  review of factual extrinsic evidence, the findings of fact themselves are reviewed under the

12  'clearly erroneous' standard, [citation] but the principles of contract law applied to those facts are

13  reviewed *de novo*.") The standard of review for analyzing the question of whether Shah breached

14  the PSA is de novo.

15  **II.    THE PSA WAS NO LONGER OPERATIVE AT THE TIME OF THE ALLEGED**
   **BREACH**

16
17      Shah could not have breached any obligation to provide new and full appraisals of his

18  property because by the time the Trustee's counsel demanded those appraisals, the Bankruptcy

19  Court had already indicated at the December 16, 2009 hearing that it would not approve the sale

20  on the terms of the existing PSA. (*See generally* Appellant's Br. at 14-15.) The Trustee does not

21  dispute that Shah's legal obligation to buy the Hotel under the PSA and its two amendments was

22  conditioned on the approval of the Bankruptcy Court or that Shah's obligations under the PSA

23  would terminate if and when the Bankruptcy Court refused to approve the sale on the terms

24  proposed by the PSA. Rather, the Trustee claims that the Bankruptcy Court merely continued the

25  hearing until January 4, 2010, without issuing any findings on whether it would approve the sale

26  based on the terms of the then existing contractual terms. (Appellee's Br. at 10-11.) The

27  undisputed record contradicts that claim.

28      A primary purpose of the continuation was to allow the parties time to attempt to agree on

4

1 | significant modifications to the PSA.  At the December 16, 2009 hearing, Judge Efremsky
2 | expressly stated that he would not approve the sale on the terms on which it was being proposed
3 | under the PSA.  (App. 180-81, RT 12/16/09 at 39-40 ("I don't think I could approve this deal
4 | because I'm concerned that GECC is not adequately protected, because I'm not sure what the
5 | value of this deal is in today's dollars.").)  Two days later, during a status conference, Judge
6 | Efremsky made clear that his approval of the sale would require loan documents with
7 | substantially modified terms, as well as proof that the terms of the revised sales agreement
8 | provided sufficient value to exceed the outstanding liens on the hotel.  (App. 192-93, RT
9 | 12/18/09 at 5-6.)  Meyers, the Hotel's attorney at that hearing, conceded he needed to obtain
10 | Shah's agreement to a Third Amendment containing "some of these changes we're making,"
11 | (App. 191, *id*., at 4.), as well as his approval of "revised loan docs."  (App. 192, *id*., at 5.)
12 | The Trustee's brief fails to acknowledge, much less discuss, that at the December 16, 2009
13 | hearing, after Judge Efremsky made clear that he would not approve the sale based upon the
14 | terms of the PSA as they then existed, Meyers conceded that significant modifications of the
15 | PSA's contractual terms, by means of a third amendment to the PSA, would be necessary.  The
16 | PSA and the first two amendments plainly did not contain those new terms, and, of course, Shah
17 | had no legal obligation to agree to any new terms.  Because the Bankruptcy Court refused to
18 | approve the sale on the terms of the PSA in its then-existing form, Shah's contractual obligations
19 | under the PSA terminated at the same time, and he cannot be held liable for any alleged
20 | subsequent breach.

**III.    THE TRUSTEE FAILED TO ESTABLISH THAT THE PSA'S RISK-OF-LOSS PROVISION APPLIED ONLY TO "PHYSICAL" DAMAGE**

By the time of the alleged breach, the PSA was void under section 9.1, titled "Risk of
Loss," because the value of the Hotel had decreased by more than ten percent.  (*See* Appellant's
Br. at 16-17.)  In response, the Trustee does not dispute the significant decline in the Hotel's
value.  Rather, he claims that the Risk of Loss provision applies only to physical damage or loss.
Nothing in that provision states that risk of loss is limited to physical damage.  As noted in
Appellant's Opening Brief, the risk being insured by the provision is not a risk of physical

5

1   damage, but the resulting loss in value the property could suffer.  There is no principled

2   distinction between loss in value resulting from an unexpected fire, and loss in value resulting

3   from an unexpected global recession.

4        The Trustee attempts to gloss over this by referring to California Civil Code section 1662,

5   the Rutter Guide, and even an insurance form.  (*See* Appellee's Br. at 12-13.)  Section 1662, and

6   the Rutter Guide explaining that section, are not relevant to the plain meaning of the PSA, as

7   section 1662 applies in situations where, unlike here, the parties' agreement is silent with respect

8   to how the risk of loss is allocated.

9        The Trustee's reliance on an insurance form is patently improper and must be disregarded.

10  Not only did the Bankruptcy Court expressly recognize that the PSA is fully integrated,

11  preventing the introduction of parol evidence to explain its meaning (*see* Order at 7), but the

12  form was not part of the record before the Bankruptcy Court and therefore may not now be

13  introduced or considered.  (*See* Appellant's Resp. to Appellee's Request for Judicial Notice, filed

14  concurrently herewith; *see also Iris Biotechnologies, Inc. v. Heller Ehrman LLP*, No. C

15  12-06232, 2013 WL 4456063, at *3 (N.D. Cal. Aug. 12, 2013) (granting motion to strike

16  documents submitted to the district court during bankruptcy appeal because "[p]apers not filed

17  with the bankruptcy court or admitted into evidence by that court . . . cannot be part of the record

18  on appeal"); *In re Nauman*, No. 10-00414, 2011 WL 240804, at *4 (D. Haw. Jan. 21, 2011)

19  ("'documents or facts not presented to the bankruptcy court are not part of the record on appeal'"

20  (quoting *United States v. Elias*, 921 F.2d 870, 874 (9th Cir. 1990) (internal alterations omitted).)

21  **IV.    THE TRUSTEE FAILED TO DEMONSTRATE THAT THE PSA OBLIGATED
           SHAH TO OBTAIN NEW APPRAISALS**

22       As the party asserting a claim for breach of contract, the Trustee had the burden to prove

23  to the Bankruptcy Court that the PSA obligated Shah to obtain new appraisals.  He failed to carry

24  that burden, as nothing in the PSA or either of the two operative amendments required Shah to

25  commission costly new appraisals of his real estate.  (*See generally* Appellant's Br. at 19-20.)

26  Indeed, Meyers admitted at trial that the PSA, which he drafted, did not state that Shah was

27  obligated to commission new appraisals or that Shah was required to expend funds in providing

28

6

1   assistance to the sale.  (App. 360, RT 5/06/13 at 158.)

2          In his response, the Trustee attempts to rewrite the PSA by claiming that it required

3   "up-to-date" appraisals.  He relies on a number of extrinsic sources, including an irrelevant

4   federal statute, 11 U.S.C. § 506, which sets forth when the claim of a creditor is presumed to

5   have secured status, a dictionary, and several cases that have nothing to do with the issue at hand.

6   The Trustee's use of the dictionary should be disregarded, both because it was not something

7   relied upon by the Bankruptcy Court, and because of the skepticism courts have expressed in

8   using dictionaries to interpret contract provisions.  *Iris Biotechnologies, Inc.*, 2013 WL 4456063,

9   at *3; *In re Nauman*, 2011 WL 240804, at *4; *see also Harris v. Gulf Ins. Co.*, 297 F.Supp. 2d

10  1220, 1225 (N.D. Cal. 2003) (recognizing the California Supreme Court's statement that reliance

11  on a dictionary for the meaning of a key word is a "basic fallacy of contract interpretation"

12  (internal quotation marks omitted)); *UIP Ltd., LLC v. Lincoln Nat. Life Ins. Co.*, 09-0006, 2009

13  WL 4497233, at *9 (D. Ariz. Nov. 30, 2009) (agreeing with the principle that "common sense is

14  as much a part of contract interpretation as is the dictionary or the arsenal of canons" (internal

15  quotation marks omitted).)

16         The cases relied up by the Trustee have no bearing on the issue of whether the PSA, by its

17  plain terms, required Shah to obtain new appraisals.  *See In re 499 W. Warren Street Assoc.*, 151

18  B.R. 307, 313 n.7 (Bankr. N.D.N.Y. 1992) (recognizing that different valuation determinations

19  may be appropriate for different purposes and finding that, in the context of a motion by a

20  creditor to lift a stay, the court would use the property's current value); *In re Coates*, 180 B.R.

21  110, 117-19 (Bankr. D.S.C. 1995) (explaining why, in the context of a Chapter 13 petition, the

22  court decided to value debtors' motor vehicle at the time of the valuation hearing, rather than at

23  the date of the filing of the petition or the date of the confirmation of the plan, though conceding

24  that other courts had used different dates); *In re Deep River Warehouse, Inc.*, No. 04-52749,

25  2005 WL 1287987, at *8 (Bankr. M.D.N.C., March 14, 2005) (in a motion seeking relief from an

26  automatic stay, appropriate to value property as of the hearing date because that date provides the

27  "best approximation of the extent of the debtor's equity in the property that exists to adequately

28  protect the creditor should its motion be denied.")  None of those cases involves a provision in a

1  contract requiring financial disclosures that would assist in obtaining Bankruptcy Court approval

2  for the sale of real property, and none sheds any light on the obligations set forth in the PSA.

3  Further, it is misleading to claim, as the Trustee does, that Shah refused to provide "up to date"

4  appraisals. Shah gave Meyers appraisals from the previous year of all his properties, and he

5  offered to have those updated.  (App. 381-82, RT 5/06/13 at 179-80.)  Meyers declined that offer

6  and insisted on brand new appraisals.

7          Even from a practical perspective, the Trustee's interpretation of the PSA would not

8  work.  The Trustee claims that Shah was obligated to have new appraisals dated as of the

9  "continued hearing for additional evidence called for by the Bankruptcy Court on December 16,

10  2009," i.e., January 4, 2010.  (Appellee's Br. at 16.)  The undisputed evidence in the record

11  established that such an appraisal requires several weeks to a month and a half to complete,

12  making it unlikely that Shah, who was not asked for appraisals until after the December 16, 2009

13  hearing, would have been able to comply, even had he any obligation to do so.[3]  (App. 448, 550,

14  RT 5/07/13 at 246, 348.)

15          In any event, the Hotel, and thus the Trustee, effectively conceded that the PSA and the

16  first two amendments did not require new appraisals by proffering Shah the Third Amendment to

17  the PSA, which was drafted by counsel for the Seller-Hotel, Meyers, who also drafted the PSA.

18  The Third Amendment, which Shah refused to sign, would have required Shah, at his expense, to

19  "commission professional and fully accredited, current appraisals of Mr. Shah's personal assets,

20  including, but not limited to, any real property assets owned or controlled by Mr. Shah, and to

21  provide copies of said appraisals to Seller, and to pay the appraisers that are the authors of such

22  appraisals to testify in deposition and at the Evidentiary Hearing on behalf of Seller."

23  (App.138-39, Third Am. at 2-3.)

24          In his brief, the Trustee does not explain how the inclusion by Meyers of this language in

25  the proposed Third Amendment could be consistent with the Trustee's claim that the PSA already

26  _____

27          [3] Not only did they require a significant amount of time, but the new appraisals were
enormously expensive, costing between ten , fifteen, or eighteen thousand dollars per property.

28  (App. 448, 550, RT 5/07/13 at 246, 348.)  Perhaps this explains why the Seller did not
commission the appraisals himself, though he was free to do so.

1  contained those requirements.  In fact, nowhere in the Argument section of the Trustee's brief is

2  the proposed Third Amendment even acknowledged.  If the PSA contained such a burdensome

3  and costly obligation to obtain new appraisals, Meyers would not have had to resort to inserting

4  such a provision in the proposed Third Amendment.  Indeed, during the telephonic hearing on

5  December 18th, Meyers admitted that he would need to seek Shah's approval of "some of the

6  changes" he was making to the sale terms by means of the proposed Third Amendment,

7  confirming that the terms of the Third Amendment were not contained in the PSA.

8  By its plain terms and in light of the undisputed evidence in the record, including the actions and

9  statements by Meyers, the PSA did not require Shah to obtain new appraisals of his property.

10  **V.    NOTHING IN THE RECORD SUPPORTS THE TRUSTEE'S CLAIM THAT THE**
11  **BANKRUPTCY COURT WOULD HAVE APPROVED THE SALE IF SHAH HAD**
**DEMONSTRATED A NET WORTH OF $11 MILLION**

12  In his Opening Brief, Shah demonstrated that the Trustee clearly failed to prove that the

13  Bankruptcy Court per Judge Efremsky would have approved the sale of the Hotel if Shah had

14  commissioned new appraisals.  (*See generally* Appellant's Br. at 23-25.)  Even if Shah had been

15  obligated to obtain expensive new appraisals, which he was not, there was no point in doing so

16  because the value of his properties had decreased so much that he was no longer able to establish

17  a net worth anywhere near to his personal guaranty of twenty million dollars.  (*See generally*

18  Appellant's Br. at 23, 24.)  Because Shah's refusal to commission new appraisals plainly was not

19  the "but-for" cause of the collapse of the sale, Shah cannot be held liable to the Trustee for any

20  damages resulting from the Hotel failing to obtain the judicial approval that was a key condition

21  precedent to the sale going forward.

22  In response, the Trustee claims that Judge Johnson's award of more than eleven million

23  dollars includes an implicit finding, as a "logical necessity," that the sale would have been

24  approved.  (Appellee's Br. at 20.)  Given Judge Johnson's factual findings confirming Shah's

25  assessment of the greatly diminished value of his real estate (Order at 20), an implicit finding that

26  Shah could have provided sufficient equity to satisfy the twenty million dollar threshold is rather

27  a logical impossibility.  Now for the first time, however, the Trustee claims that the Bankruptcy

28  Court would have approved the sale even if Shah had presented appraisals demonstrating a net

9

1  worth of only eleven million dollars.  (Appellee's Br. at 19, 21.)  This argument finds no support

2  in the record: it was not raised at any of the hearings before Judge Efremsky, discussed at trial

3  before Judge Johnson, or even mentioned anywhere in the Trustee's Complaint.

4        This argument is also flatly contradicted by the undisputed evidence in the record,

5  including Judge Efremsky's statements; testimony at the trial by Manou Mobedshahi, the

6  principal owner of the Hotel; statements made at trial by counsel for the Hotel-Seller; and even

7  by the Trustee's own brief.  During the December 16, 2009 hearing, Judge Efremsky expressly

8  stated his concern about whether Shah would be able to establish a basis for the personal

9  guaranty of twenty million dollars: "A potential problem is with regards to the buyer's guaranty

10  of $20 million, there needs to be a showing that the buyer is good for that, *and today*."  (App.

11  176-77, RT 12/16/09 at 35-36 emphasis added.)  Nowhere did Judge Efremsky suggest that a

12  showing of less than twenty million dollars would be acceptable to him.

13        Mobedshahi testified before Judge Johnson that Judge Efremsky "was agreeable [to the

14  sale] but one thing that he wanted to make sure that Mr. Shah is good enough for this deal.  And

15  he wanted to have official appraisals and proof that these numbers are correct, the 24 million

16  dollars net worth."  (App. 269, RT 5/06/13 at 67.)  And in the proposed Third Amendment to the

17  PSA, Meyers inserted a demand that Shah provide "values of assets owned by Mr. Shah, net of

18  Mr. Shah's liabilities, sufficient to prove adequate protection of GECC's interests." (App., at 138,

19  Third Amendment at 2, *emphasis added*.)  If Meyers thought that less than twenty million in

20  assets was required by Judge Efremsky, he surely would have urged Shah to go forward on the

21  basis of that reduced sum, but all involved knew that twenty million in equity was required, a

22  figure that Judge Johnson found was far beyond Shah's then-existing assets.

23        Indeed, at trial before Judge Johnson, Trustee's counsel stated that "[w]ithout the 20

24  million dollars being backed up, Mr. Shah has admitted it, the deal doesn't work.  He knew he

25  had to back up the 20 million; it's an empty guaranty. The whole thing is going to tank, and that

26  was the juncture we reached at the December 16th hearing.  In my trial brief, I've shown Judge

27  Efremsky came back to that again and again."  (App. 600-01, RT 5/07/13 at 398-399.)  Contrary

28  to the Trustee's present protestations (Appellee's Br. at 19, 21), he is bound by the deliberate,

clear and unequivocal position on this issue that he took below.  *Whaley v. Belleque*, 520 F.3d 997, 1002 (9th Cir. 2008) (quoting *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996)) ("Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position.")

Finally, in his appellate brief, the Trustee admits in several places that Shah needed to establish that he could cover the personal guaranty by demonstrating a net worth of at least twenty million dollars.  For example, the Trustee states that "it appeared that Bankruptcy Court Approval would be given if Shah could support in any substantial way his $20 million Guaranty," (Appellee's Br. at 5), and also admits that "Meyers thought Bankruptcy Court Approval would issue, assuming Shah would provide some reasonable backup for the $20 million Guaranty."  (*Id.* at 6.)

The Trustee claims that "Judge Johnson [] found that honest appraisals showing [a value in excess of $11,000,000] would have compromised adequate protection and would have allowed the sale to be approved."  (Appellee's Br. at 19.)  The Trustee fails to provide any citation to Judge Johnson's Order to support this assertion, no doubt because the Order itself does not discuss "honest appraisals" or suggest in any way that appraisals valuing Shah's real estate holdings at less than twenty million dollars would have satisfied Judge Efremsky.  There is simply no evidence in the record to support the Trustee's newly minted argument that the sale would have been approved upon a showing by Shah of a net worth of eleven million dollars. There is overwhelming evidence in the record that contradicts the new argument.

## VI.   COMPLIANCE WITH SELLER'S DEMANDS WOULD HAVE REQUIRED FALSE APPRAISALS

Judge Efremsky required, and demanded, proof that Shah was worth least twenty million dollars.  Had Shah been contractually obligated to provide the Seller-Hotel with new appraisals equal to that amount, as the Third Amendment demanded, the only way he could have complied would have been to offer appraisals with false information, but California law excuses performance of a contractual obligation where performance would be unlawful.  *Bright v. Bechtel*

*Petroleum, Inc.*, 780 F.2d 766, 772 (9th Cir. 1986) (party not required to violate the law to avoid liability for breach).

**VII.   THE TRUSTEE FAILED TO PROVE THAT THE BANKRUPTCY COURT WOULD HAVE APPROVED THE SALE, EVEN HAD SHAH TENDERED TWENTY MILLION DOLLARS IN EQUITY**

Absent from Judge Johnson's Order and, more importantly, from the evidentiary record, is any proof that the only reason the sale fell apart was because Shah failed to provide new appraisals of his property reflecting twenty million dollars in equity.  To the contrary, there is substantial evidence in the record that Judge Efremsky would not have approved the sale even if Shah had provided new appraisals totaling that amount.  (Appellant's Br. at 23-25.)

In his responsive brief, the Trustee all but ignores that evidence and instead argues that Judge Johnson in fact conducted a so-called "trial-within-a-trial," determined that GECC would have been adequately protected, and therefore concluded that the sale would have been approved, or at least should have been approved, by Judge Efremsky, if only Shah would have commissioned new appraisals and proffered adequate equity.  (Appellee's Br. 21-22.)

The Trustee pulls his "trial-within-a-trial" paradigm from the realm of malpractice law. (Appellee's Br. at 20.)  He cites no authority to support the use of that framework in the context of bankruptcy appeals.  That aside, there is nothing in Judge Johnson's Order that remotely suggests he adopted such an approach.[4]  And, more importantly, the evidence in the record makes clear that Judge Efremsky would not even have reached the issue of the adequacy of Shah's limited guaranty, because his first concern was the inadequate present value of the proposed deal, which would have forced GECC, over the the secured creditor's objection, to extend to Shah the mortgage on which the Hotel had defaulted, with little or no economic benefit to GECC.  Judge Efremsky was not going to let that happen. (App. 192-93, RT 12/18/09 at 5-6: Only if the present day value "comes in greater than the liens on the subject property" would the court move on to the "discussing other adequate-protection issues.")  The Seller certainly never proved below that

---

[4]  The only "evidence" cited by Appellee is the testimony of Meyers, his counsel, opining that Meyers "believe[d] the Bankruptcy Court would have granted its approval of the sale. (Appellee's Br. at 22.)

1   Judge Efremsky would have found his "present day value" concern sufficiently satisfied to

2   approve the sale.  The record is to the contrary.

3        The trustee claims that the relevant inquiry is not what Judge Efremsky *would have* done,

4   but instead this Court must decide what Judge Efremsky *should have* done with respect to

5   approving the sale.  (Appellee's Br. at 20.)  But to establish an entitlement to damages, the

6   Trustee must demonstrate that Judge Efremsky *necessarily* would have approved the sale but for

7   Shah's alleged breach. *Internet Brands v. UltimateCoupons.com*, LLC, CV 11-5358-CAS, 2013

8   U.S. Dist. LEXIS 110734, at *14 (C.D. Cal. Aug. 5, 2013) (damages must be proximately caused

9   by other party's breach of the contract); Cal. Civ. Code § 3301 ("[n]o damages can be recovered

10  for breach of contract which are not clearly ascertainable in . . . origin."); *Aerofund Fin., Inc. v.*

11  *Top Zip Int'l, Inc.*, Case No.: C 11-00221, 2011 U.S. Dist. LEXIS 134102, at *5 (N.D. Cal. Nov.

12  21, 2011).  The Trustee has not come close to meeting that burden.  Nor could he, given the

13  overwhelming evidence in the record establishing that, even with new appraisals, Judge

14  Efremsky would not have approved the sale for a number of different reasons, including his

15  concerns about GECC's protection[5], and because the Holiday Inn Group had not yet approved the

16  sale.[6]

17       The Trustee's burden of proving that Judge Efremsky would necessarily have approved

18  the sale is complicated by the additional fact that approval rested within Judge Efremsky's

19  discretion.  *See, e.g., Lebbos v. Schuette*, No. 2:08-cv-00680, 2008 WL 5103200, at *1 (E.D. Cal.

20  Dec. 2, 2008) (bankruptcy court approval of a sale includes exercise of court's discretion); *In re*

21  *Quality Stores, Inc.*, 272 B.R. 643, 647 (Bankr. W.D. Mich. 2002) (bankruptcy court may

22  approve sale of assets if all provisions of § 363 are followed).

23  _____

24       [5] The Trustee, had the burden of proving that GECC's protection was adequate.  11
25  U.S.C. § 363(p)(1).

26       [6] The Trustee claims that the Holiday Inn Group already approved the sale.  (Appellee's
27  Br. at 24.)  In fact, the Holiday Inn Group had only approved Shah's application to become a
    licensed franchisee, and, as the trustee's own witness testified, was not going to make a decision
28  as to whether to approve the sale until after the Bankruptcy Court issued its order.  (App. 264-65,
    RT 5/06/13, at 62-63.)

1    Judge Efremsky had no obligation to approve the proposed sale even if all the conditions

2    stated in the PSA were met; rather, his only legal duty was to determine, in the exercise of his

3    discretion, whether the reornaization of the Hotel was "feasible." *See* 11 U.S.C. § 1129(a)(11)

4    (A bankruptcy court shall not confirm a plan for reorganization unless it finds that

5    "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further

6    financial reorganization, of the debtor or any successor to the debtor under the plan, unless such

7    liquidation or reorganization is proposed in the plan"). "Feasibility" is a shorthand reference to

8    the requirements of § 1129(a)(11). *See In re Geijsel*, 480 B.R. 238, 256–57 (Bankr. N.D. Tex.

9    2012) (describing how feasibility is required for confirmation). Even if the Trustee had

10   demonstrated that all of the criteria for the sale were satisfied, he still would have needed to

11   prove that Judge Efremsky necessarily would have exercised his discretion in a particular

12   manner, a showing the Trustee cannot possibly make.

13                                        **CONCLUSION**

14    The judgment of the Bankruptcy Court should be reversed and judgment entered in favor

15   of  Defendant/Appellant Chandrakant Shah.

16   Dated: May 16, 2014                    Respectfully submitted,

17                                          RIORDAN & HORGAN

18

19                                          By   /s/ Dennis P. Riordan
                                                 Dennis P. Riordan
20
                                            Attorneys for Defendant-Appellant
21                                          CHANDRAKANT SHAH

22

23

24

25

26

27

28