# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| IN RE:<br><br>SAN JOSE AIRPORT HOTEL, LLC, dba HOLIDAY INN SAN JOSE, et al.,<br><br>　　　　Debtors. | Case No.  5:13-cv-04634-EJD<br><br>(Appeal from Poonja v. Sevak & Sons, L.P. et al. (In re San Jose Airport Hotel, LLC), Bankr. N.D. Cal. (San Jose) Case No. 09-51045, Adv. No. 11-5236) |
| MOHAMED POONJA, Chapter 7 Trustee,<br><br>　　　　Plaintiff-Appellee,<br><br>　　v.<br><br>CHANDRAKANT SHAH,<br><br>　　　　Defendant-Appellant. | **ORDER AFFIRMING IN PART AND REVERSING IN PART JUDGMENT OF BANKRUPTCY COURT AND REMANDING FOR FURTHER PROCEEDINGS** |

After holding a two-day trial, the United States Bankruptcy Court for the Northern District of California found Appellant Chandrakant Shah ("Appellant") liable to Appellee Mohamed Poonja ("Appellee"), the Chapter 7 trustee for Debtor San Jose Airport Hotel, LLC ("Debtor"), for breach of contract.  Concluding that Appellant had failed to fulfill its promise to serve as a guaranty for the purchase of a hotel that Debtor owned, the bankruptcy court awarded Appellee nearly $12 million.  Appellant now appeals the judgment to this Court, which has jurisdiction under 28 U.S.C. § 158.  For the following reasons, the Court affirms in part and reverses in part the judgment of the bankruptcy court and remands for further proceedings.

1

Case No.: 5:13-cv-04634-EJD
ORDER AFFIRMING IN PART AND REVERSING IN PART JUDGMENT OF
BANKRUPTCY COURT AND REMANDING FOR FURTHER PROCEEDINGS

## I. BACKGROUND

### A. Factual Background

A number of basic facts are undisputed, and the bankruptcy court set them forth in its Order Following Trial. See Dkt No. 18 ("Order"). Debtor purchased the San Jose Airport Hotel ("Hotel") in 1998 for $13 million, financed by a loan from the General Electric Capital Corporation ("GECC"). Debtor renewed the loan twice over the following decade. By the time a third renewal was necessary, the Hotel was suffering financial problems and the GECC loan was delinquent. In an effort to extend the loan, Debtor filed for bankruptcy on February 18, 2009.

With the help of a real estate broker, Debtor arranged to sell the Hotel to Appellant. On September 4, 2009, after months of negotiations and preliminary agreements, Debtor and Appellant executed a Purchase and Sale Agreement ("PSA"). See Dkt. No. 23 at 1. The PSA specified that an entity named Sevak & Sons, L.P. ("Sevak") would purchase the hotel for $46.2 million, consisting of $750,000 in cash and a secured promissory note for $45.45 million. The promissory note was to be secured by all the property of the Hotel and a franchise agreement with Holiday Inn. In the PSA, Sevak warranted that it was a "legally and properly formed entity existing under the laws of the State of California, and has full power and authority to execute, deliver, and perform its obligations under this Agreement." Id. at § 6.2.1. Sevak also promised that it would:

> actively and fully assist Seller [Debtor] in obtaining Bankruptcy Court approval, as required by Seller, including without limitation by providing complete financial, experiential and strategic information and testimony that will support adequate assurance of future performance under the Holiday Inn Agreement, the qualifications of Buyer [Sevak] and [Appellant] as operator and owner of the Holiday Inn Property and as a franchisee from IHG (by assignment), and the adequacy of protection of the interests of GECC.

Id. at § 6.2.4. The sale was conditioned on the approval of the bankruptcy court and contained an integration clause. Id. at §§ 4.2.5, 9.10.

Because the bulk of the consideration for the sale was a promissory note, Appellant agreed to guaranty the PSA. He signed an agreement in which he guaranteed "the payment and prompt

2

Case No.: 5:13-cv-04634-EJD
ORDER AFFIRMING IN PART AND REVERSING IN PART JUDGMENT OF
BANKRUPTCY COURT AND REMANDING FOR FURTHER PROCEEDINGS

performance of each and every covenant, warranty, representation, provision, obligation, term and condition made or to be kept or performed by [Sevak]" under the PSA.  Id., Ex. C at 1.  The guaranty agreement limited Appellant's liability to $20 million.

On October 9, 2009, the parties executed amended sale documents with changes to several provisions not relevant here.  Appellant signed another guaranty agreement in connection with that contract.  Appellant also executed a declaration representing that he had a personal net worth of approximately $24 million.  On October 14, 2009, Debtor filed a motion asking the bankruptcy court to approve the sale to Sevak.  GECC objected, raising concerns about the sale's viability.

In an effort to address GECC's concerns and obtain the bankruptcy court's approval, the parties decided to modify the proposed sale a second time.  On November 10, 2009, they executed a Second Amendment to the Purchase and Sale Agreement (the "Second Amended PSA"), which increased the cash down payment to $2 million and reduced the promissory note to $44.2 million.  See Dkt. No. 23 at 56.  Although the Second Amended PSA did not say so explicitly, Debtor intended to assign the promissory note to GECC in order to sell the Hotel free and clear of GECC's lien.  GECC therefore remained interested in the sale and in particular in Shah's guaranty.  At the initial hearing on the motion to sell on November 16, 2009, the bankruptcy court indicated that it would need evidence to support Appellant's claimed financial wherewithal.  Debtor and GECC stipulated to continue the hearing on the motion until December 16, 2009.  Afterwards, Debtor asked Appellant to obtain appraisals of his own property holdings, which were the basis of much of Appellant's claimed net worth.

Appellant, however, refused to provide any more financial information.  He also declined to execute another amended PSA in which he would agree to pay for the requested appraisals.  By that time, Appellant explained at trial, providing that information would be pointless; the value of his properties had declined significantly, and he was no longer worth anywhere near $24 million.  He offered no further evidence of his situation.  Ultimately, GECC foreclosed on the Hotel, and Debtor's estate received nothing from the foreclosure proceeds.

3

Case No.: 5:13-cv-04634-EJD
ORDER AFFIRMING IN PART AND REVERSING IN PART JUDGMENT OF BANKRUPTCY COURT AND REMANDING FOR FURTHER PROCEEDINGS

## B. Procedural Background

Appellee filed an adversary complaint against Sevak, Appellant, and his wife on August 11, 2011. See App. to Appellant's Brief, Vol. I at 1. Appellee later filed an amended adversary complaint against Appellant and Sevak. See Dkt. No. 19 at 45 ("Compl."). Appellee alleged five claims: (1) breach of contract against Sevak; (2) breach of limited guaranty against Shah; (3) intentional interference with contractual relationship against Shah; (4) fraud against Shah; and (5) negligent misrepresentation against Shah. Compl. ¶¶s 41-77.

The bankruptcy court held a trial on May 6 and 7, 2013. Order at 1. After trial, it issued an order with its findings of fact and conclusions of law. See id. The bankruptcy court found for Appellee only on the claim that Appellant had breached the guaranty. Id. at 14-22. In particular, the bankruptcy court held the following:

> Prior to the sale, as noted above, [Appellant] refused to provide information requested by Debtor and Meyers. [Appellant] had an obligation to "actively and fully assist" Debtor in obtaining information, which included financial information. [Appellant] breached the PSA by refusing to cooperate in the effort to assist with Debtor's efforts to get the sale approved. [Appellant] argues that he could not demonstrate that he was worth $23.895 million because, by the time of the sale in late 2009, his properties had fallen in value, just as the Hotel had. He claims it would have been futile for him to supply information because the information he would have supplied would not have been sufficient for the court to approve the sale. But this argument misses the point. It was the refusal to cooperate—not [Appellant]'s inability to prove that he was worth $23.895 million—that is the heart of [Appellant]'s problem. Nowhere in the sale documents was [Appellant] required to prove he had $23.895 million in net assets.
>
> [Appellant] maintained at trial that he complied with his obligations under the PSA. In [Appellant]'s view, the failure to secure court approval is Debtor's fault alone, which was a breach of Debtor's obligation under the PSA. The court rejects this view because Debtor did everything it could to obtain Bankruptcy Court approval. The PSA and the Guaranty made clear that [Appellant] was required to cooperate with Debtor's effort to secure Bankruptcy Court approval for the Hotel's sale. [Appellant] failed to cooperate with Debtor's efforts by refusing to provide "completely financial, experiential, and strategic information and testimony" in support of the sale. (PSA § 6.2.4). Thus, [Appellant] is responsible for Debtor's failure to have the Bankruptcy Court approve the proposed sale.

Id. at 15.

4

Case No.: 5:13-cv-04634-EJD
ORDER AFFIRMING IN PART AND REVERSING IN PART JUDGMENT OF
BANKRUPTCY COURT AND REMANDING FOR FURTHER PROCEEDINGS

As for damages, Appellee contended that he was due $11,648,758, calculated as the agreed-upon purchase price of $46,200,000 with accrued interest, minus deductions for the amount due to GECC and various fees associated with the sale. Id. at 12.  Appellant did not contest the calculation of damages. Id.  The bankruptcy court found "the calculation of damages to have been reasonable, supported by the evidence, and not contradicted," and it "therefore adopt[ed] $11,648,758 as the amount of damages for the breach." Id. at 22.  Accordingly, the bankruptcy court entered judgment for Appellee in that amount. Dkt. No. 21 at 490.  Appellant then filed this appeal.

## II.   LEGAL STANDARD

### A.   Standard of Review

A district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order or degree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.  "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." Id.  This Court therefore reviews the bankruptcy court's findings of fact for clear error, and it reviews the bankruptcy court's conclusions of law *de novo*. See In re Mortg. Store, Inc., 773 F.3d 990, 994 (9th Cir. 2014) (citing In re Lazar, 83 F.3d 306, 308 (9th Cir. 1996)).  "The question of what standard of review applies to contract matters is not always so clearcut because '[t]he interpretation of a contract and the determination as to its breach are a mixed question of fact and law.'" L.K. Comstock & Co., Inc. v. United Eng'rs & Constructors Inc., 880 F.2d 219, 221 (9th Cir. 1989) (quoting Libby, McNeill, & Libby v. City Nat'l Bank, 592 F.2d 504, 512 (9th Cir. 1978)).  "Thus, if the contract interpretation includes a review of factual extrinsic evidence, the findings of fact themselves are reviewed under the 'clearly erroneous' standard, but the principles of contract law applied to those facts are reviewed de novo." Id. (citations omitted).

In reviewing an order or judgment of the bankruptcy court, the Court has the "power to

consider any issue presented by the record even if the issue was not presented to the bankruptcy court." In re Pizza of Haw., Inc., 761 F.2d 1374, 1379 (9th Cir. 1985). However, "[i]f the bankruptcy court's factual findings are silent or ambiguous as to a material factual question, the district court must remand the case to the bankruptcy court for the necessary factual determination; the district court may not make its own independent factual findings." In re Hall, Bayoutree Assocs., Ltd., 939 F.2d 802, 804 (9th Cir. 1991) (citing Wegner v. Grunewaldt, 821 F.2d 1317, 1320 (8th Cir. 1987)).

### B.   Principles of Contract Law

In California, a contract must be interpreted "to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636. "It is not the parties' subjective intent that matters, but rather their 'objective intent, as evidenced by the words of the contract.'" Block v. eBay, Inc., 747 F.3d 1135, 1138 (9th Cir. 2014) (quoting Reilly v. Inquest Tech., Inc., 218 Cal. App. 4th 536, 554 (2013)). "If a contract is reduced to writing, 'the intention of the parties is to be ascertained from the writing alone,' the words being interpreted in their 'ordinary and popular sense,' provided that the language 'is clear and explicit, and does not involve an absurdity.'" Id. (quoting Cal. Civ. Code §§ 1638, 1639, 1644).

The measure of damages for a breach of contract "is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Cal. Civ. Code § 3300. "No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin." Id. § 3301. "It has long been settled in California that 'the proof must establish with reasonable certainty and probability that damages will result in the future to the person wronged.'" Vestar Dev. II, LLC v. Gen. Dynamics Corp., 249 F.3d 958, 961 (9th Cir. 2001) (quoting Caminetti v. Manierre, 23 Cal. 2d 94, 101 (1943)).

### III. DISCUSSION

#### A. Liability for Breach of Contract

Appellant contends that he did not breach the contract for three reasons: (1) the PSA was rendered void when the bankruptcy court refused to authorize the sale; (2) the PSA was terminated under a "risk of loss" provision after the Hotel's value decreased substantially; and (3) Appellant had no contractual obligation to obtain new appraisals or to provide false information to support a sale. The Court addresses each contention in turn. Because each of these raises a question of contract interpretation, which is a matter of law, the Court reviews the bankruptcy court's conclusions *de novo*.

##### i. Refusal to Authorize Sale

Under the PSA, Debtor had no obligation to close the transaction until the bankruptcy court entered an order "authorizing the sale of the [Hotel] to [Sevak] upon the terms set forth in this Agreement, and . . . approv[ing] this Agreement." PSA § 4.2.5. At the December 16, 2009 hearing on the motion to approve the sale, the bankruptcy court expressed reluctance to sign off on the transaction because it was "concerned that GECC is not adequately protected." Dkt. No. 25 at 252-53.[1] The bankruptcy court held a status conference two days later, where it again said that it needed proof that the transaction's present-day value exceeded the outstanding liens on the Hotel. See id. at 264-65. Without ruling on the motion to approve the sale, the bankruptcy court continued the hearing on the motion until January 4, 2010. See id. at 272.

The Court finds that the PSA was never voided. Although the bankruptcy court expressed some skepticism of the proposed deal, it did not deny the motion to approve it. To the contrary, at both the hearing and the status conference, the bankruptcy court sought and obtained assurances that the parties to the sale were working to ensure that GECC's interest would be protected.

---

[1] Appellee asks the court to take judicial notice of the transcripts of hearings before the bankruptcy court. See Dkt. No. 24. Because these are "not subject to reasonable dispute," Fed. R. Evid. 201(b), and because Appellant does not object, the request is GRANTED. The Court does not rely on the remaining documents presented for judicial notice, so the corresponding requests are DENIED AS MOOT.

7

Case No.: 5:13-cv-04634-EJD
ORDER AFFIRMING IN PART AND REVERSING IN PART JUDGMENT OF
BANKRUPTCY COURT AND REMANDING FOR FURTHER PROCEEDINGS

Appellant's purported breach was refusing to participate in that process, and it occurred well before the bankruptcy court denied the motion to authorize the sale. In any case, under the PSA, the bankruptcy court's disapproval would only eliminate Debtor's obligations; it had no effect on Appellant's guaranty.

### ii. Risk of Loss Provision

The PSA provided that "[a]ll risk of loss with respect to the [Hotel] shall remain with [Debtor] until the Closing has occurred." PSA § 9.1. It further provided that, "[i]f the [Hotel] is materially damaged by fire or other cause prior to Closing, such that 10% or more of its value is destroyed, this Agreement shall terminate" unless both sides agree to continue. Id. The bankruptcy court recognized that, during the period at issue, the Hotel apparently suffered an "astonishing drop in value." Order at 20.

Appellant contends that this drop in value constituted material damage that triggered the risk of loss provision and terminated the contract. The Court must interpret the contract terms in their "ordinary and popular sense." Cal. Civ. Code § 1644. The ordinary and popular sense of the words "materially damaged," especially in the context of the following phrase "by fire or other cause," contemplates physical damage to the property. Appellant cites a number of cases finding similar provisions to have been triggered, but each of these cases involved physical damage. See Dixon v. Salvation Army, 142 Cal. App. 3d 463, 465 (1983) (destruction by fire); Redevelopment Agency of City of Richmond v. Maynard, 244 Cal. App. 2d 260, 265 (1966) (destruction by vandalism); Palos Verdes Props. v. Cty. Sanitation Dist. No. 5 of L.A. Cty., 177 Cal. App. 2d 679, 683 (1960) (damage by landslide). Appellant's reading of the contract does not comport with its ordinary meaning, and the Court cannot accept it.

### iii. Duty to Obtain Appraisals

The PSA obligated Appellant to "actively and fully assist [Debtor] in obtaining Bankruptcy Court approval, as requested by [Debtor], including without limitation by providing complete financial, experiential and strategic information and testimony that will support . . . the

8

Case No.: 5:13-cv-04634-EJD
ORDER AFFIRMING IN PART AND REVERSING IN PART JUDGMENT OF
BANKRUPTCY COURT AND REMANDING FOR FURTHER PROCEEDINGS

adequacy of protection of the interests of GECC." PSA § 6.2.4.[2]  Appellant does not dispute that he refused to obtain new appraisals at Debtor's request.  The bankruptcy court found that this refusal constituted a breach of the PSA.

This Court agrees.  The PSA explicitly required Appellant to "actively and fully assist" Debtor by "providing complete financial . . . information."  Id.  Appraisals of Appellant's properties constituted part of this complete financial information, and those appraisals were necessary to obtain the bankruptcy court's approval for the sale.  Appellant may be right that providing the appraisals would have been fruitless, but that decision was reserved to the discretion of the bankruptcy court, not Appellant alone.  Until the bankruptcy court rejected the sale, the PSA obligated Appellant to assist in obtaining approval.  Appellant did not do so.

Appellant makes much of the fact that Debtor's counsel later asked Appellant to sign an amendment to the PSA including an explicit requirement that Appellant commission current appraisals of his personal assets.  That extrinsic evidence, however, is irrelevant to the question of what the executed PSA says.  Appellant's subjective intent in signing the contract makes no difference either.  Appellant also contends that the bankruptcy court's interpretation of the contract would have required him to misrepresent his financial condition.  In fact, the PSA required Appellant to cooperate only to the extent possible within the law.  Appellant did not do even that.  The bankruptcy court correctly found him liable for breach of contract.

### B.  Damages for Breach of Contract

The bankruptcy court concluded, as a matter of law, that Appellant breached the PSA when he "failed to cooperate with Debtor's efforts by refusing to provide 'complete[] financial, experiential, and strategic information and testimony' in support of the sale."  Order at 15.  "Thus," the bankruptcy court found, "[Appellant] is responsible for Debtor's failure to have the Bankruptcy Court approve the proposed sale."  Id.  Furthermore, the bankruptcy court found

---

[2] To be precise, the PSA imposed this obligation on Sevak, and Appellant guaranteed Sevak's obligations under the PSA.

9

Case No.: 5:13-cv-04634-EJD
ORDER AFFIRMING IN PART AND REVERSING IN PART JUDGMENT OF
BANKRUPTCY COURT AND REMANDING FOR FURTHER PROCEEDINGS

Appellee's "calculation of [$11,648,758 in] damages to have been reasonable, supported by the evidence, and not contradicted." Id. at 22.  Appellant contends on appeal that the bankruptcy court erred because, even if he had cooperated by providing up-to-date financial information, the bankruptcy court still would not have approved the sale.  As a result, Appellant contends that Appellee failed to show that the claimed damages were proximately caused by the breach.

As an initial matter, the Court must determine which standard of review applies to the bankruptcy court's conclusions.  The extent of the causal connection between the breach and the failure to obtain approval of the sale raised no legal questions, and as such it can only have been a factual determination.  The same applies to the amount of damages caused by the breach.  Both of these are subject to clear error review.

Even under this deferential standard, however, the Court finds that the bankruptcy court erred.  The bankruptcy court's order following trial does not discuss these issues in detail.  Nevertheless, Appellee contends that the bankruptcy court implicitly found that it would have approved the sale even if Appellant's net worth turned out to be as little as half of the $24 million he initially claimed.[3]  The record does not support this contention.  At the hearing on the motion to approve the sale, the bankruptcy court sought "a showing that the buyer is good for [$20 million], and today," because "it would seem that's part of the deal." Dkt. No. 25 at 249.  Appellee did not establish with reasonable certainty that Appellant's breach caused the claimed damages.

The causal nexus between the breach and the harm and, relatedly, the amount of damages are material factual questions.  However, perhaps because Appellant did not contest them at trial, "the bankruptcy court's factual findings are silent or ambiguous." In re Hall, 939 F.2d at 804.  Appellee presents circumstantial proof that GECC might have been protected even with a lower appraisal of Appellant's assets, but that is for the bankruptcy court to decide.  The Court remands to the bankruptcy court to make the necessary factual determinations in the first instance.

---

[3] Judge Efremsky presided over the hearings on the motion to approve the sale, but the case was later reassigned to Judge Johnson, who presided over the trial and entered the judgment at issue in this appeal.

10
Case No.: 5:13-cv-04634-EJD
ORDER AFFIRMING IN PART AND REVERSING IN PART JUDGMENT OF
BANKRUPTCY COURT AND REMANDING FOR FURTHER PROCEEDINGS

### IV. ORDER

The order of the bankruptcy court is AFFIRMED as to Appellant's liability for breach of contract but REVERSED as to the amount of damages that the breach caused to Appellee. The case is REMANDED for further proceedings to determine damages. The Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: 6/17/2016



EDWARD J. DAVILA
United States District Judge

11
Case No.: 5:13-cv-04634-EJD
ORDER AFFIRMING IN PART AND REVERSING IN PART JUDGMENT OF
BANKRUPTCY COURT AND REMANDING FOR FURTHER PROCEEDINGS